IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Thomas E. Brinkman, Jr., *et al.*, | : |
| | : Case No. 1:09-cv-326 |
| Plaintiffs, | : |
| | : Chief District Judge Susan J. Dlott |
| v. | : |
| | : ORDER GRANTING PLAINTIFFS' |
| Armond D. Budish, Speaker of the Ohio | : MOTION FOR SUMMARY |
| House of Representatives and Chairman of the | : JUDGMENT AND ISSUANCE OF A |
| Joint Legislative Ethics Committee of the | : PERMANENT INJUNCTION AND |
| Ohio General Assembly, *et al.*, | : DENYING DEFENDANTS' MOTION |
| | : FOR SUMMARY JUDGMENT |
| Defendants. | : |

This matter is before the Court on Plaintiffs' Motion For Summary Judgment and the Issuance of a Permanent Injunction (doc. 29) and Defendants' Amended Motion for Summary Judgment (doc. 34). Plaintiffs in this case challenge the constitutionality of Ohio Revised Code ("O.R.C.") § 102.03(A)(4), a statute which prohibits former members of the General Assembly from representing another person or organization before the Ohio General Assembly for a period of one year subsequent to their departure from office. The Court previously issued an Order Granting Motion for Preliminary Injunction ("Injunction Order") temporarily enjoining enforcement of § 102.03(A)(4). For the reasons that follow, the Court **GRANTS** Plaintiffs' motion, **DENIES** Defendants' motion, and **PERMANENTLY ENJOINS** enforcement of § 102.03(A)(4).

## I.   BACKGROUND

### A.   Factual Background

Plaintiffs are Thomas E. Brinkman, Jr., the Coalition Opposed to Additional Spending and

1

Taxes ("COAST"), and Mark W. Miller. COAST is an organization which advocates for the restraint of government taxing and spending in Ohio on the local, state, and national level. (Doc. 29-1 ¶¶ 2, 8-9.)[1] COAST conducts advocacy activities in numerous ways, including operating a blog, publishing an email newsletter, sending press releases, and direct lobbying. (*Id.* ¶ 3.) COAST has directly lobbied legislators through its leadership and by testimony before legislative bodies. (*Id.* ¶ 4.) Presently, COAST seeks to advocate on a number of budgetary issues before the Ohio General Assembly, including advocating against proposed operating subsidies for the Underground Railroad Freedom Center. (*Id.* at ¶ 5.)

Both Brinkman and Miller are members and supporters of COAST, and Miller serves as the treasurer of COAST. (*Id.* ¶¶ 8-10.) Brinkman served in the Ohio General Assembly from January 2001 until December 2008. (Doc. 31-2 ¶ 1.)[2] Brinkman has sought to represent COAST before the Ohio General Assembly an uncompensated basis.[3] (Doc. 31-2 ¶¶ 2, 6.) However, O.R.C. § 102.03(A)(4), as written, prohibited Brinkman from representing COAST before the Ohio General Assembly or any of its committees from the date he left the General Assembly through January 1, 2010. (*Id.* ¶¶ 4, 5; Doc. 29-1 ¶ 10.)[4]

---

[1] References to Plaintiffs' Proposed Undisputed Facts (doc. 29-1) are limited to those facts Defendants admitted to be true in Defendants' Response (doc. 38).

[2] References to Defendants' Proposed Undisputed Facts (doc. 32-1) are limited to those facts Plaintiffs admitted to be true in Plaintiffs' Response (doc. 37-1).

[3] The parties have stipulated that COAST paid Curry Printing Company—which is owned by Kathy Brinkman, the wife of Plaintiff Brinkman—approximately $13,195.00 for printing services performed on its behalf between January 1, 2001 and January 1, 2009. (Doc. 31-2 ¶ 7.)

[4] The Court recognizes that Defendants were prohibited from enforcing O.R.C. § 102.03(A)(4) against Brinkman or any former member of the Ohio General Assembly from the August 4, 2009, the date this Court granted a preliminary injunction against Defendants, through

Defendants are the Joint Legislative Ethics Committee ("JLEC"), a twelve-member committee of the Ohio General Assembly with responsibility for governing former members of the General Assembly with respect to state ethics laws; Armond D. Budish, a member of the Ohio House of Representatives and a member and chairman of JLEC; eleven other members of JLEC;[5] Tony W. Bledsoe, the executive director of JLEC; Joseph T. Deters, the Hamilton County Prosecuting Attorney; Ron O'Brien, the Franklin County Prosecuting Attorney; Richard C. Pfeiffer, Jr., the City Attorney for the City of Columbus; and John P. Curp, the City Solicitor for the City of Cincinnati. Defendants Deters, O'Brien, Pfeiffer, and Curp are sued in their official capacities only. (Doc. 4 ¶ 20.)

JLEC is responsible for enforcement of O.R.C. § 102.03(A)(4) and would be the body to receive or initiate complaints against Brinkman for violations of the statute. (Doc. 29-1 ¶ 33.) JLEC also is empowered to investigate complaints or charges for violations of the statute. (*Id.* ¶ 34.) If JLEC determines by a preponderance of the evidence that § 102.03(A)(4) has been violated, it must report the violation to the appropriate prosecuting authority. (*Id.* ¶ 35.)

**B.     Procedural Background**

Plaintiffs filed their initial Verified Complaint and a Motion for Temporary Restraining Order and Preliminary Injunction on May 11, 2009. They filed an Amended Complaint on May

---

the present date.

Additionally, in his Affidavit, Brinkman states that he declined to join the Ohio League of Conservation Voters and the Right to Life of Greater Cincinnati because O.R.C. § 102.03(A)(4) would have prevented him from representing the groups before the Ohio General Assembly in 2009.

[5] Bill Harris, William Batchelder, Capri Cafaro, Louis Blessing, John Carey, Jennifer Garrison, Matt Huffman, Dale Miller, Sue Morano, Tom Niehaus, and Matthew Szollosi.

12, 2009.[6] Defendants opposed the issuance of a temporary restraining order and preliminary injunction. On August 4, 2009, the Court issued the Injunction Order preliminarily enjoining the enforcement of O.R.C. § 102.03(A)(4). The parties thereafter engaged in discovery and filed the pending summary judgment motions. Plaintiffs now seek and Defendants oppose the issuance of a permanent injunction enjoining the enforcement of O.R.C. § 102.03(A)(4). Plaintiffs contend that the statute violates the First Amendment and the Equal Protection Clause both facially and as applied.

## II.   THE STATUTE

Ohio's revolving door statute provides in relevant part:

> (4) For a period of one year after the conclusion of employment or service as a member or employee of the general assembly, no former member or employee of the general assembly shall represent, or act in a representative capacity for, any person on any matter before the general assembly, any committee of the general assembly, or the controlling board. . . . As used in division (A)(4) of this section "person" does not include any state agency or political subdivision of the state.

O.R.C. § 102.03(A)(4).

"Matter" is defined in the statute to mean "the proposal, consideration, or enactment of statutes, resolutions, or constitutional amendments." O.R.C. § 102.03(A)(5). To "represent" includes "any formal or informal appearance before, or any written or oral communication with, any public agency on behalf of any person." *Id.* Under the Ohio Revised Code generally, a "person" is defined as "an individual, corporation, business trust, estate, trust, partnership, and association," O.R.C. § 1.59(C), but the specific statute clarifies that "person" does not include "any state agency or political subdivision of the state" for purposes of O.R.C. § 102.03(A)(4).

---

[6] Plaintiffs filed Notice of Verification of Amended Complaint on May 29, 2009. (Doc. 11.)

4

Violation of the statute is considered a misdemeanor offense of the first degree. *See* O.R.C. § 102.99(B).

JLEC has issued a memorandum interpreting O.R.C. § 102.03(A)(4) to apply to both compensated and uncompensated lobbying by former members of General Assembly on behalf of another person. (Doc. 29-1 ¶¶ 40-42.)

**III.    STANDARDS GOVERNING MOTIONS FOR SUMMARY JUDGMENT**

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). On a motion for summary judgment, the movant has the burden of showing that no genuine issues of material fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

The movant may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-24 (1986). In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). The nonmoving party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The Court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249. A

genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

## IV. ANALYSIS

### A. First Amendment

The First Amendment to the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech, . . . or the right of the people peaceably to assemble, and to petition the government for redress of grievances." U.S. Const. amend 1. "The Fourteenth Amendment extends these prohibitions against the States." *Citizens for Tax Reform v. Deters*, 518 F.3d 375, 379 (6th Cir. 2008), *cert. denied*, *Ohio v. Citizens for Tax Reform*, 129 S.Ct. 596 (2008). "[I]mplicit in the right to engage in activities protected by the First Amendment [is] a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984). Lobbying the government falls within the gambit of protected First Amendment activity. *See F.T.C. v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411, 426 (1990) ("It is, of course, clear that the association's efforts . . . to lobby District officials to enact favorable legislation . . . were activities that were fully protected by the First Amendment."); *Roberts*, 468 U.S. at 627 (characterizing lobbying as being "worthy of constitutional protection under the First Amendment"). However, that right is not unfettered and can be the subject of appropriate regulation. *See*, *e.g., McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 356 n. 20 (1995) ("The activities of lobbyists who have direct access to elected representatives, if undisclosed, may well present the appearance of corruption."); *United States v. Harriss*, 347 U.S. 612, 625 (1954) (upholding registration and reporting requirements for Congressional lobbyists).

Plaintiffs contend that O.R.C. § 102.03(A)(4) violates the First Amendment both facially and as applied. The statute prohibits former members of the Ohio General Assembly from representing another person or entity (except for a state political subdivision) on matters before the Ohio General Assembly for a period of one year after they leave office.[7] The Court found in the Injunction Order that the constitutionality of § 102.03(A)(4) should be examined under a strict scrutiny analysis and Defendants now appear to concede this issue. (Doc. 16 at 8-10; Doc. 34 at 6-7.) As stated above, lobbying "is fully protected by the First Amendment." *Superior Court Trial Lawyers Ass'n*, 493 U.S. at 426. First Amendment protection is "at its zenith" for "core political speech" which involves "interactive communication concerning political change." *Buckley v. Amer. Const. Law Found.*, 525 U.S. 182, 186-87 (1999); *see also Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 185 (6th Cir. 2008) ("Speech advocating a campaign to affect government policy is the essence of protected, political speech."). "When a State places a severe or significant burden on a core political right . . . the provision must be narrowly tailored and advance a compelling state interest." *Citizens for Tax Reform*, 518 F.3d at 387 (citing *Meyer v. Grant*, 486 U.S. 414, 425 (1988); *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997)).

The statute operated in this instance to prohibit Brinkman from representing COAST on matters before the Ohio General Assembly. "The First Amendment protects appellees' right not only to advocate their cause but also to select what they believe to be the most effective means for so doing." *Meyer*, 486 U.S. at 424; *see also Nat'l Ass'n of Social Workers v. Harwood*, 874 F.

---

[7] The statute prohibits former members from acting on matters before the Ohio General Assembly, its committees, or a controlling board. O.R.C. § 102.03(A)(4). For simplicity, the Court will refer to all three types as matters before the Ohio General Assembly.

Supp. 530, 537 n. 8 (D.R.I. 1995) ("[I]ncorporated within the First Amendment protection of lobbying are the practical concerns of effectiveness and economic constraints."), *rev'd on other grounds*, 693 F.3d 622.  Likewise, "the right to choose a spokesperson to advocate a group's collective views lies implicit in the speech and association rights guaranteed by the First Amendment."  *Fraternal Order of Police v. Mayor and City Council of Ocean City, Md.*, 916 F.2d 919, 923 (4th Cir. 1990); *cf. O'Brien v. Leidinger*, 452 F. Supp. 720, 725 (E.D. Va. 1978) ("The right to advocate would be hollow indeed if the state, rather than the association's members, could select the group's advocate.")  The statute severely burdened Plaintiffs' First Amendment rights by prohibiting COAST from using Brinkman as its advocate before the General Assembly.

      **1.**      **Compelling Government Interest**

Given that the statute is subject to strict scrutiny, the Court next must determine whether O.R.C. § 102.03(A)(4) furthers a compelling government interest and is narrowly tailored to achieve that end.  *See Citizens for Tax Relief*, 518 F.3d at 387.  Defendants proffer the Affidavit of Defendant Tony Bledsoe, the executive director of Defendant JLEC, to establish the State of Ohio's compelling interests.  Bledsoe states that the General Assembly enacted § 102.03(A)(4) to effectuate three compelling interests: (1) to prevent unethical practices of public employees and public officials; (2) to promote, maintain, and bolster the public's confidence in the integrity of state government; and (3) to prevent unequal access to the General Assembly by outside organizations by virtue of any significant relationships with current and former public officials who may be in a position to influence government policy.  (Bledsoe Aff. ¶ 4.)

Plaintiffs attack these purported justifications on multiple grounds.  To begin, Plaintiffs

assert that the Court need not accept Bledsoe's statements as true because he offers mere post-hoc justifications which are not based on his personal knowledge of the General Assembly's intent in enacting § 102.03(A)(4). However, Plaintiffs' argument discounts Bledsoe's experience as the executive director of JLEC, the body entrusted to enforce § 102.03(A)(4). Moreover, this Court in the Injunction Order implicitly recognized that substantially similar justifications could be gleaned from the text of the statute. (Doc. 16 at 11.)

Plaintiffs also attack the merits of each proposed justification. The Court will examine each of Defendants' purported compelling interests more closely. As to the first justification, Bledsoe states that Ohio "has a compelling interest in preventing legislators from taking official acts in exchange for employment as a lobbyist immediately upon leaving the legislature." (*Id.* ¶ 5.) Similarly, as to the second justification, Bledsoe states that Ohio has an interest in bolstering the public's confidence in the integrity of state government—regardless of any actual corrupt or unethical practices—because of past instances of government corruption. (Bledsoe Aff. ¶ 6.) Federal courts have found that the analogous interests of preventing corruption or the appearance of corruption are compelling governmental interests. *See*, *e.g.*, *Nixon v. Shrink Mo. Gov't PAC*, 528 U.S. 377, 388-89 (2000) (recognizing as compelling interests the restricting *of quid pro quo* corruption, the appearance of corruption, the appearance of improper influence, and opportunities for abuse); *North Carolina Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 715-16 (4th Cir. 1999) (identifying as compelling state interests in the lobbying context prohibiting corruption and the appearance of corruption); *Ohio v. Nipps*, 66 Ohio App. 2d 17, 21, 419 N.E.2d 1128 (1979) (analyzing a more restrictive predecessor statute and holding that Ohio had compelling interest to restrict unethical practices of employees and public officials).

Importantly, the Supreme Court recently has emphasized that the "governmental interest in preventing corruption or the appearance of corruption, [is] limited to *quid pro quo* corruption." *Citizens United v. Federal Election*, — S. Ct. —, 2010 WL 183856, at *23 (Jan. 21, 2010). Defendants concede that their first two justifications "depend upon the payment of compensation to the former-legislators." (Bledsoe Aff. ¶ 8.) Accordingly, the Court finds that Defendants' first two purported justifications are compelling interests for restricting compensated lobbying by former members of the General Assembly.

The first two justifications, however, cannot constitute a compelling interest to prohibit uncompensated lobbying by former members of the General Assembly, such as the lobbying Brinkman sought to perform on behalf of COAST. Defendants respond that the third justification constitutes a compelling interest supporting O.R.C. § 102.03(A)(4) regardless of whether the former legislators are lobbying on a compensated or uncompensated basis. Bledsoe states that the third justification "reflects the State of Ohio's interest in preventing former legislators from using their close relationships with former colleagues and special knowledge of the legislative process to gain access as lobbyists in ways that provide them unequal access to public officials [in comparison] to that of others petitioning the government, and thereby allow them to play an undue role in crafting and passage of legislation." (Bledsoe Aff. ¶ 7.) Plaintiffs attack this justification as an unlawful attempt to "level the playing field."

The Supreme Court recently spoke against attempts to favor or disfavor certain speakers or viewpoints:

> Premised on mistrust of governmental power, the First Amendment stands against attempts to disfavor certain subjects or viewpoints. Prohibited, too, are restrictions distinguishing among different speakers, allowing speech by some but not others. As instruments to censor, these categories are interrelated: Speech

> restrictions based on the identity of the speaker are all too often simply a means to control content.
>
> Quite apart from the purpose or effect of regulating content, moreover, the Government may commit a constitutional wrong when by law it identifies certain preferred speakers. By taking the right to speak from some and giving it to others, the Government deprives the disadvantaged person or class of the right to use speech to strive to establish worth, standing, and respect for the speaker's voice. The Government may not by these means deprive the public of the right and privilege to determine for itself what speech and speakers are worthy of consideration. The First Amendment protects speech and speaker, and the ideas that flow from each.

*Citizens United*, — S. Ct. —, 2010 WL 183856, at *19. The Supreme Court concluded that "[w]e find no basis for the proposition that, in the context of political speech, the Government may impose restrictions on certain disfavored speakers." *Id.* at *20. Moreover, the Supreme Court rejected the suggestion that political corruption necessarily follows from the fact that a speaker may be favored by or have special access to elected officials. *Id.* at *33. "The appearance of influence or access, furthermore, will not cause the electorate to lose faith in our democracy." *Id.* Though the Supreme Court spoke in the specific context of corporate expenditures to advocate for the election or defeat of a candidate, *id.* at *6, the Supreme Court's reasoning refutes the premise that O.R.C. § 102.03(A)(4) is necessary to prevent former General Assembly members from having special access to the legislative process.

The Court concludes that Plaintiffs' third purported justification does not constitute a compelling interest. As such, Defendants have failed to establish any compelling governmental interest justifying § 102.03(A)(4) as applied to uncompensated lobbying. The Court holds that § 102.03(A)(4) is unconstitutional as applied to prohibit Brinkman from representing COAST on an uncompensated basis.

**2.    Narrowly Tailored**

Because Plaintiffs have challenged O.R.C. § 102.03(A)(4) both facially and as applied, and because the Court found above that Defendants have established compelling interests justifying O.R.C. § 102.03(A)(4) as applied to compensated lobbying, the Court next must examine whether the statute is narrowly tailored to achieve those ends. The statute must be narrowly tailored to achieve the objectives of avoiding corruption (*i.e.*, the prevention of unethical practices) or the appearance of corruption (*i.e.*, bolstering the public's confidence in the integrity of government). Defendants make two arguments that the statute is narrowly tailored: (1) the restriction in § 102.03(A)(4) lasts for only twelve months and (2) an Ohio appellate court in *Nipps* upheld a prior version of § 102.03(A)(4).

As to the twelve-month limit, Defendants have not articulated or presented evidence to establish that the temporally limited restriction adequately addresses the concern against *quid pro quo* corruption. "The quantum of empirical evidence needed to satisfy heightened judicial scrutiny of legislative judgments will vary up or down with the novelty and plausibility of the justification raised." *Nixon*, 528 U.S. at 391. Courts do not "accept mere conjecture as adequate to carry a First Amendment burden." *Id.* at 392; *see also Citizens for Tax Reform*, 518 F.3d at 387 (striking down statute where there was "no evidence in the record" to support a showing that the statute was narrowly drawn to meet the compelling state interest). Defendants have not established that the danger of *quid pro quo* corruption or the appearance of corruption is significantly lessened if the former legislator is permitted to lobby the General Assembly one year and one day after leaving the legislature.

As to the *Nipps* precedent, the prior statute only prohibited advocacy on behalf of a client on matters about which the former public official had personally participated when he or she was

in office. 66 Ohio App. 2d at 20.[8] The statute's stated purpose—to ensure that "no public official or employee will engage in a conflict of interest or realize personal gain at public expense from the use of 'inside' information"—was closely tied to its narrow restriction against advocacy on matters on which the official had personally participated. *Id.* at 20-21.[9] Conversely, under the current version of the statute, former General Assembly members are prohibited from representing clients on any matter before the General Assembly, regardless of whether it is a matter in which they personally participated while in office and on which they had the opportunity to gain "inside" information. The *Nipps* decision, therefore, does not support a finding that the current statute is narrowly tailored. Rather, it provides an example of how the current statute could be narrowed.

Additionally, the current § 102.03(A)(4) is over-inclusive because it does not restrict only compensated lobbying, but rather restricts both compensated and uncompensated lobbying. Several other states, by way of contrast, have more narrowly tailored revolving door statutes that

---

[8] The former statute provided as follows:

No public official or employee shall represent a client or act in a representative capacity for any person before the public agency by which he is or within the preceding twelve months was employed or on which he serves or within the preceding twelve months had served on any matter with which the person is or was directly concerned and in which he personally participated during his employment or service by a substantial and material exercise of administrative discretion.

*Nipps*, 66 Ohio App. 2d at 18-19 (quoting O.R.C. § 102.03(A)).

[9] Additionally, in the current statute, a different subsection similarly prohibits former public officials from representing clients or other persons "on any matter in which the public official . . . personally participated as a public official . . . through decision, approval, disapproval, recommendation, the rendering of advice, investigation, or other substantial exercise of administrative discretion." O.R.C. § 102.03(A)(1).

13

restrict only compensated lobbying activities. *See*, *e.g.*, Ala. Code § 36-25-13(a); Haw. Rev. Stat. 84-18(b); Md. Code Ann., State Gov't § 15-504(d)(1). Finally, § 102.03.04(A)(4) is under-inclusive because it does not restrict other behaviors or activities of former members of the General Assembly that might give rise to actual or perceived corruption, such as the acceptance of gifts or offers for employment unrelated to lobbying.

For all these reasons, the Court finds that the statute is not narrowly tailored. Therefore, O.R.C. § 102.03(A)(4) does not withstand strict scrutiny analysis. The statute violates the First Amendment facially and as applied to Plaintiffs.

### 3. Remedy

The Court next must determine whether a permanent injunction in the appropriate remedy. The standard for granting permanent injunctions is similar to the familiar standard for the issuance of a preliminary injunction. The party seeking relief must demonstrate the following:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*U.S. v. Matusoff Rental Co.*, 494 F. Supp. 2d 740, 756 (S.D. Ohio 2007) (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-13 (1982), and *Amoco Production Co. v. Village of Gambell, AK*, 480 U.S. 531, 542 (1987)); *see also Beeker v. Olszewski*, 415 F. Supp. 2d 734, 754 (E.D. Mich. 2006) (similar statement of law). The party seeking a permanent injunction must establish success on the merits rather than a probability of success on the merits. *See Beeker*, 415 F. Supp. 2d at 754; *State of Ohio E.P.A. v. U.S. Dept. of Labor*, 121 F. Supp. 2d 1155, 1168 (S.D. Ohio 2000).

These factors support the issuance of a permanent injunction here. Plaintiffs have established a violation of the First Amendment here. Even a minimal infringement upon First Amendment rights results in irreparable harm. *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville and Davidson Cty.*, 274 F.3d 377, 400 (6th Cir. 2001). Further, "[t]here are no available remedies at law that are adequate to compensate for a loss of First Amendment rights." *Am. Booksellers Found. for Free Expression v. Strickland*, 512 F. Supp. 2d 1082, 1106 (S.D. Ohio 2007), *question certified to the Ohio Supreme Court*, 560 F.3d 443 (6th Cir. 2009). Finally, "it is always in the public interest to prevent the violation of a party's constitutional rights." *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994). The Court will permanently enjoin the enforcement of O.R.C. § 102.03(A)(4).

**B.      Equal Protection**

The Court need not and will not address the parties' equal protection arguments because the Court has found that O.R.C. § 102.03(A)(4) must be struck down on the basis that it violates the First Amendment.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion For Summary Judgment and the Issuance of a permanent Injunction (doc. 29) is **GRANTED** and Defendants' Amended Motion for Summary Judgment (doc. 34) is **DENIED**. It is hereby **ORDERED** that Defendants, together with their officers, agents, servants, employees, and attorneys, as well as all other persons who are in active concert or participation with any of the foregoing individuals, are hereby **PERMANENTLY ENJOINED** from enforcing Ohio Revised Code § 102.03(A)(4) and rules promulgated thereto against Plaintiffs and any others similarly situated.

IT IS SO ORDERED.

                                                            ___s/Susan J. Dlott_____
                                                            Chief Judge Susan J. Dlott
                                                            United States District Court